# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHAD DURRELL ROBINSON | CIVIL ACTION NO. 13-298 |
| VERSUS | JUDGE JOHN W. deGRAVELLES |
| | MAG. JUDGE STEPHEN C. RIEDLINGER |
| CITY OF ST. GABRIEL, ET AL. | JURY TRIAL |

## RULING AND ORDER

This matter came before the Court on the Motion for Summary Judgment (R. Doc. 23) filed by the Defendants, The City of St. Gabriel, Police Chief Kevin Ambeau, Sr., Officer Robert Jones, Jr., Officer Justin Darville, and Officer Sterling Redditt (collectively, the "Defendants"). Plaintiff Chad Durrell Robinson opposes the motion. While no formal oral argument was conducted, the parties discussed the issues involved in this motion at the October 3, 2014, Pretrial Conference.

Considering the parties' arguments, the law, and the facts in the record, the Court grants in part Defendants' Motion for Summary Judgment. All claims against all Defendants are dismissed, except Plaintiff Chad Durrell Robinson's claims (1) against Officers Robert Jones, Jr. and Officer Justin Darville for ordinary state law negligence for their alleged failure to protect Robinson's property and for their alleged infliction of emotional distress and (2) against the City of St. Gabriel for vicariously liable for that negligence.

**I. Relevant Factual Background**

On or about May 12, 2012, Chad Robinson attended a party in St. Gabriel, Louisiana. (Affidavit of Chad Durrell Robinson, R. Doc. 25-1). As he was leaving the party, Robinson was approached by several individuals. (Id.). Robinson attempted to leave his vehicle but was

1

prevented from doing so because of a large number of people surrounding his vehicle. (Id.). Robinson claims that one of those individuals tried to enter his car and that another had a weapon that appeared to be a handgun. (Id.). At that time, according to Robinson's affidavit, he drove off. (Id.). According to Robinson's deposition testimony, he put his head down, slowly accelerated, and pulled forward, but looked up slightly when he saw that people did not get out of the way of his car. (Deposition of Chad Durrell Robinson, p. 46-47, R. Doc. 23-4)

Officer Redditt was patrolling Highway 75 when he observed twenty-five to thirty people ahead in the road creating a disturbance. (Incident Report, R. Doc. 23-5, and Declaration of Officer Sterling Redditt, R. Doc. 23-6). Redditt approached the location with his emergency lights on and verbally commanded all the individuals to leave the scene. (Id.). While ordering the individuals to leave, Redditt saw a dark-colored sports car hit several people and flee the scene of the accident. (Id.). Redditt ran toward the incident and radioed other officers on patrol in the location that a dark-colored vehicle had just hit several people and then sped off. (Id.). Redditt also told Officer Robert Jones to be on the look-out for this vehicle. (Id). Redditt radioed the dispatcher that emergency medical responders were needed at the scene to help two individuals who were on the ground in the road. (Id.). These individuals were later transported to the hospital. (Id.).

Officer Jones was on patrol with Officer Justin Darville when Officer Redditt radioed and requested his location to stop the vehicle suspected of being involved in the hit and run. (Incident Report, R. Doc. 23-7, and Declaration of Officer Robert J. Jones, Jr., R. Doc. 23-8). Jones and Darville pulled over the vehicle, ordered Robinson out of the car, "placed him under arrest, and … began to secure him with handcuffs." (Id.).

Jones was only able to secure one handcuff on Robinson when he noticed about six vehicles approaching at a high rate of speed. (Id.). Jones claims he grabbed Robinson and moved him out of the way of the approaching vehicles (Id.). Jones said there were twelve or "about fifteen" people in the crowd. (Incident Report, R. Doc. 23-7, and Trial Tr., p. 18, May 9, 2013, *State of Louisiana v. Dunbar, et al*, No. 631-12 and 620-12, Div. "C," 18th Judicial District Court, Parish of Iberville, State of Louisiana, ("Trial Tr."), R. Doc. 25-2). While moving Robinson, another individual, Herman Poplars, who was not a law enforcement agent, approached with a weapon drawn (Id.). Both parties agree that the individual with a gun threatened to shoot Robinson. (Jones Declaration, R. Doc. 23-8, and Robinson Affidavit, R. Doc. 25-1).

Robinson then claims that the officer stepped to the side of Robinson and said "Beaver I got this," and that, when Robinson "noticed that the Officer was not attempting to disarm this individual," Robinson fled up the levee. (Robinson Affidavit, R. Doc. 25-1).

Officer Jones, on the other hand, says that the officers drew their weapons and ordered Poplars to put down his weapon, but Poplars refused to put it down. (Incident Report, R. Doc. 23-7, and Jones Declaration, R. Doc. 23-8). Jones claims he stepped between Robinson and Populars and attempted to shield Robinson. (Trial Tr., p. 18, R.Doc. 25-2). As Jones was ordering Poplars to put his weapon down, Jones briefly took his attention off of Robinson, at which point Robinson took off on foot toward the levee. (Jones Declaration, R. Doc. 23-8). When Robinson fled, Poplars and about five others chased after him, at which time Jones heard gunfire and saw Poplars shooting at Robinson. (Incident Report, R. Doc. 23-7, and Jones Declaration, R. Doc. 23-8).

3

Because the officers were outnumbered by the mob, Jones radioed for backup to alert law enforcement on duty that Robinson fled and was being chased. (Id.). While Jones was radioing for backup, he heard glass breaking and saw people beating Robinson's vehicle with baseball bats and stabbing the tires. (Id.). Jones claims that he and Officer Darville were unable to control the crowd by themselves and were forced to wait for backup. (Id.). Further, no St. Gabriel police officer participated in damaging the vehicle or in any assault on Mr. Robinson. (Id.).

Eventually, other officers arrived on the scene. (Incident Report, R. Doc. 23-7). A search for Robinson commenced. (Id.).

When Robinson began hearing gunshots, he ultimately jumped into the Mississippi River. (Robinson Affidavit, R. Doc. 25-1). He claims he heard several people yelling, causing him to swim until he was out of harm's way. (Id.). He stayed in the brush along the river until the next evening. (Id.). He reconnected with his family and later turned himself into the police. (Robinson Deposition, p. 88, R. Doc. 23-4). He "was informed that [his] vehicle had been destroyed beyond recognition while Police officers were present." (Robinson Affidavit, R.Doc. 25-1).

## II.   Discussion

### A. Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing

that there is a *genuine issue for trial*.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. "In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes[.]" *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir.1991).

### B. Analysis

#### (1) Section 1983 Claims Against the City of St. Gabriel and Police Chief Kevin Ambeau

The Fifth Circuit has explained:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom. [*Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)] and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). In addition to "causation" ("moving force"), the plaintiff must establish "culpability," or "deliberate indifference" to" federally protected rights." *Id.* at 580 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

5

Here, Robinson has failed to submit any evidence of any official policy or custom. Instead, Robinson in two instances relies on the St. Gabriel Police Department Polices and Procedures Manual submitted by the Defendant (R. Doc. 18-6). Robinson cites to the fact that, under the policy, members of the police force shall not publicly criticize the department and how the policy provides that "[c]oncerted action and mutual protection are imperative in the restoration or order and no member of this department shall shirk danger or avoid responsibility or manifest cowardice."

However, Robinson has failed to identify how these policies are the "moving force" of any constitutional violation. Nor has Robinson shown "deliberate indifference" to any constitutional right. Accordingly, Robinson's § 1983 claims against the City of St. Gabriel are dismissed.

The §1983 claims against Police Chief Ambeau should also be dismissed. "A supervisory official such as a sheriff may not be held liable under § 1983 based on a theory of vicarious liability for the acts or omissions of his deputies." *Cook v. Perkins*, No. 12-258, 2013 WL 5372343, slip op. at *2 (M.D.La. Sept. 24, 2013) (citing *Tompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987)). "To establish the liability of a supervisor under § 1983, the plaintiff must prove either that the supervisor was personally involved in the acts causing the constitutional deprivation, or that there is a sufficient causal connection between the supervisor's conduct and the constitutional deprivation." *Id.* (citing *Lozano v. Smith*, 718 F.2d 756 (5th Cir. 1983)). Further, "[s]upervisory liability may exist without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* at *3 (citing *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002)).

Here, Ambeau did not participate in the incidents, and there is no evidence of a causal connection between any conduct by Ambeau and a constitutional deprivation. Moreover, there is no evidence Ambeau implemented any policy that was so deficient as to be a repudiation of constitutional rights. Accordingly, the § 1983 claim against Police Chief Ambeau is dismissed.

### (2) Section 1983 Claims Against the Officers for False Arrest and False Imprisonment.

Our brother in the Western District of Louisiana has explained:

> The Fourth Amendment protects individuals from unfounded arrests by requiring reasonable grounds, or "probable cause," to believe a crime has been committed. Because a claim of false arrest implicates the Fourth and Fourteenth Amendments it is, therefore, actionable under 42 U.S.C.1983 … To prevail on § 1983 action for false arrest, the plaintiff must prove that the officers lacked probable cause to arrest him. There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause, or to put another way, "[I]f there was probable cause for the arrest, a claim for false arrest is not viable."

*Maier v. Green*, 485 F.Supp.2d 711, 716 (W.D. La. 2007) (Melancon, J.) (citations omitted). The same standard applies to claims for false imprisonment. *See Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 503-504 (W.D.La. 2001) (citing *Brown v. Lyford*, 243 F.3d 185, 189-90 (5th Cir. 2001)). "To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered. … Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability that criminal activity has occurred." *Maier*, 485 F.Supp.2d at 718 (citations omitted).

Here, Robinson's claims for false arrest and false imprisonment against all the individual defendants must be dismissed. Officer Redditt did not even participate in the arrest or any of the activities at the levee. Officers Jones and Darville had probable cause for the arrest; it is undisputed that Officer Redditt saw a dark-colored sports car hit several people and flee the scene of the accident. It is also undisputed that Officer Jones saw the dark-colored vehicle.

7

Thus, there was clearly probable cause for Robinson's arrest. Accordingly, Robinson's claims for false arrest and imprisonment are dismissed.

### (3) Fifth and Fourteenth Amendment Due Process Claims

In *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d. 249 (1989), the Supreme Court explained that, while the Due Process Clause "forbids the State itself [from] depriv[ing] individuals of life, liberty or property without 'due process of law,' … its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." Thus, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

One "very limited exception" to this rule exists when a state creates a "special relationship" with a particular citizen, requiring the state to protect him from harm." *Doe ex rel. Magee v. Covington County School Dist. Ex rel. Keys*, 675 F.3d 849, 855-856 (5th Cir. 2012). This exception is created "'when the State takes a person into its custody and holds him there against his will.' In such instances, 'the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *Id.* at 856 (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d. 249 (1989)). *DeShaney* explained:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 200. However, the Fifth Circuit has warned:

> The situations in which the state assumes a duty of care sufficient to create a special relationship are strictly enumerated and the restrictions of each situation

are identical. In the circumstances of incarceration, involuntary institutionalization, and foster care, the state has, through an established set of laws and procedures, rendered the person in its care completely unable to provide for his or her basic needs and it assumes a duty to provide for these needs. Neither the Supreme Court nor this court has ever suggested that anything less than such a total restriction is sufficient to create a special relationship with the state, regardless of the age or competence of the individual.

*Doe ex rel. Magee*, 675 F.3d at 859.

*Robinson* argues that a "special relationship" was created when the police arrested Robinson and that the officers breached the duties owed to Robinson when they allowed the mob to chase him and destroy his car.

The Defendants seemed to concede at the pretrial conference that Robinson was taken into custody and that a special relationship was created, regardless of whether Officer Jones completed handcuffing him. The evidence supports the creation of the special relationship. (See Jones Declaration, R. Doc. 23-8, stating that Officer Jones "placed [Robinson] under arrest, and … began to secure him with handcuffs."). Defendants, however, contend that Robinson severed any "special relationship" created when he fled up the levee and left the custody of the officers. Thus, any damage to his car did not fall under the *DeShaney* exception.

Fifth Circuit case law indicates that, once Robinson fled, the police officers owed no duty to protect him or his car. In *Kovacic v. Villarreal,* 628 F.3d 209 (5th Cir. 2010), the Fifth Circuit reversed the district court and held that officers were entitled to qualified immunity. Officers arrested a person for public intoxication. While transporting him to a hotel where he was living with his spouse, the officers released the intoxicated man at an all-night gas station after he demanded to be let out and stated he would call his wife. The intoxicated man was later killed by a hit and run driver while walking along the road near the gas station. His heirs filed suit. In rejecting their claims, the Fifth Circuit explained:

9

> Plaintiffs have not referenced a single case in either the district courts or the court of appeals of this circuit in which state actors were held liable for private harm caused to an individual after he was released from custody. In *DeShaney* itself, the Court held that the state actor at issue, a county Department of Social Services, had no duty to act because the plaintiff was no longer in the department's custody and thus his liberty to act on his own behalf was not limited by the state actor. 109 S.Ct. at 1005–06.

*Id.* at 214. If the police owe no duty to someone after they release him from custody, as in *Kovacic*, then they certainly owe no duty to someone who flees from custody, as here.

Further, even assuming that the "special relationship" remained in effect, Robinson has not proven a valid constitutional violation. In *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002), the Fifth Circuit explained:

> Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence. The Supreme Court's discussions of abusive executive action have repeatedly emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." The Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." In elaborating on "the constitutional concept of conscience shocking," the Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."
>
> Consistent with these principles, courts applying … the "special relationship" exception to the *DeShaney* rule … have generally required plaintiffs to demonstrate (or, at the motion-to-dismiss stage, to allege) that the defendant state official at a minimum acted with deliberate in-difference toward the plaintiff.

*Id.* at 326 (citations omitted).

Here, even construing the facts in the light most favorable to the plaintiff, no reasonable juror could conclude that the Defendants acted with deliberate indifference. Officer Redditt was not at the levee and cannot be liable for any actions taken there. Officers Jones and Darville were confronted with an extremely dangerous situation. They were outnumbered by an angry

mob armed with guns and baseball bats. Robinson complains that the Officers Jones and Darville did not act to disarm Poplars, but Robinson does not identify what exactly the officers should have done that they did not do. Robinson has no firsthand knowledge of what happened after he fled, and the incident report and declaration of Jones showed that the officers, at most, acted with just ordinary negligence.[1]

Another exception to *DeShaney* that exists in other circuits is the "state-created danger" theory, but the Fifth Circuit has not adopted this doctrine. *Doe ex rel. Magee v. Covington County School Dist. Ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012).

Even if the theory were recognized in this Circuit, these facts would not satisfy the elements of that theory. The state-created danger theory requires "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Id.* (citations omitted). For the same reasons articulated above, there was no deliberate indifference here.

Accordingly, Robinson's claims of a Fifth and Fourteenth Amendment violation are hereby dismissed.

### 4. Remaining State Law Claims

Robinson alleges a number of state law claims. He claims that Defendants' "failed to effectively screen, hire, train, supervise and discipline its police officers, [concerning] how to handle aggressive situations." (Amended Complaint, R. Doc. 3, p. 6). Additionally, Robinson alleges assault, negligence in causing physical injury, intentional infliction of emotional distress,

---

[1] Robinson's counsel complained at the pretrial conference that Officer Jones testified at the related criminal trial of one of the mob members that Jones would not put himself in harm's way for a stranger like Robinson. The Court has reviewed this testimony and concludes that Officer Jones in fact testified to the opposite. He said, ""At that time, sir, I was traumatized. You know, I was scared for my life because guns everywhere, you know, and I could have got shot trying to save a stranger. **You know, but that's the line of duty I do,** but, you know --" (Trial Tr., p. 23, R. Doc. 25-2) (emphasis added).

false arrest, false imprisonment without consent, negligent hiring, "violation of rights otherwise guaranteed by under state and federal law", and property damages. (Id.). Additionally, Robinson claims that the City of St. Gabriel is liable for all of the other defendants' torts. (Id.). As explained below, the Court will dismiss all state law claims except Robinson's claim for property damages against Officers Jones and Darville and Robinson's claim for vicarious liability for that negligence against the City of St. Gabriel.

Robinson has submitted no evidence of how the officers were screened, hired, trained, supervised, or disciplined. Accordingly, these claims are dismissed.

Assault is "a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact." *N.S. v. City of Alexandria*, 919 F.Supp.2d 773, 784 (W.D.La. 2013). Under Louisiana law, if the tort of assault is raised against a law enforcement officer acting in the course of employment, the plaintiff must show that the officer acted with unreasonable or excessive force. *Elphage v. Gautreaux*, 929 F.Supp.2d 493, 515 (M.D.La. 2013). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and factors to consider are: '(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment.'" *Id.* (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977)).

Here, no reasonable person could conclude that any of the officers acted with unreasonable or excessive force. Even construing the facts in the light most favorably to Robinson, the only possible "assault" occurred when the officers arrested Robinson. Given the

fact that it was early morning and that they were confronted with a possible hit and run suspect, drawing their weapons on Robinson was not unreasonable or excessive under the circumstances. Accordingly, Robinson's claim for assault is dismissed.

Robinson also seeks damages for "negligence in causing physical injury." (Amended Complaint, R. Doc. 3, p. 6). But there is no evidence in the record that Robinson was physically injured. Accordingly, this claim is dismissed.

"In order to recover for intentional infliction of emotional distress, the plaintiffs have the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional distress suffered by the plaintiffs was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct." *Elphage*, 929 F.Supp.2d at 516 (citing *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994)). Robinson has not alleged or proven the sort of extreme or outrageous conduct that would subject the Defendants to intentional infliction of emotional distress. Accordingly, this claim is dismissed.

Concerning the false arrest and false imprisonment claim, this Court has explained that, under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority. … [I]f police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment." *Elphage*, 969 F.Supp. 2d at 514 (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La.1977)). Louisiana Code of Criminal Procedure article 213(A)(3) provides that a law enforcement officer may arrest a person without a warrant when the officer "has reasonable

cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer."

Here, as explained above, Officers Jones and Darville had reasonable cause to pull over and arrest Robinson. Accordingly, the false arrest and false imprisonment claims are dismissed.

Robinson's claim for property damages survives summary judgment. A plaintiff can have a valid claim for ordinary negligence under state law despite having no § 1983 action. *See Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002). Further, "Louisiana law provides that when property is damaged through the actions of another, the owner of the property (obligee) obtains a personal right to demand that the tortfeasor (obligor) repair the damage to the property." *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 2010-2267, 2010-2272, 2010-2275, 2010-22, (La. 10/25/2011), 79 So.3d 246, 264. Moreover, a "police officer owes a duty to a person while in his custody to protect him from injury and to care for his safety … The officer must do what is reasonable under the circumstances and is liable only for a certain category of risks to which his prisoner is subjected." *Evans v. Hawley*, 559 So.2d 500, 504 (La.App. 2 Cir. 1990) (citing *Griffis v. Travelers Ins. Co.*, 273 So.2d 523 (La. 1973)).

Thus, this Court will recognize a duty on behalf of Officers Jones and Darville to act reasonably under the circumstances. The question of whether they breached that duty is one for the jury. Summary judgment on the issue of whether Officers Jones and Darville were negligent in protecting Robinson's property is denied.

Plaintiff's claim for negligent infliction of emotional distress arising from the negligent conduct of the officers also survives summary judgment.[2] "Louisiana courts have identified only

---

[2] Robinson claims mental anguish damages in Paragraph 26 of his Amended Complaint in the section addressing his section 1983 claims. (R.Doc. 3). Construing his pleadings liberally for purposes of this summary judgment motion, this is sufficient to state a cause of action for negligent infliction of emotional distress under Louisiana state law.

14

four instances in which recovery is allowed for mental anguish without physical injury. These instances all involve 'the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serve as a guarantee that the claim is not spurious.'" *Molden v. Georgia Gulf Corp.*, 465 F.Supp.2d 606, 614-615 (M.D.La. 2006)(citing *Moresi v. State, Dept. of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La. 1990)). Under one of these categories, "[a] plaintiff may recover damages for a defendant's infliction of emotional distress based on a separate tort involving physical consequences to the person or property of the plaintiff, such as an assault or a battery, false imprisonment, trespass to land, nuisance or the invasion of the person's right to privacy." *Id.* (citing *Moresi v. State, Dept. of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990)). If Robinson can succeed on his property damage claim, he may also recover for his emotional distress claim, as the circumstances involved in this case are sufficiently special so as to involve an "especial likelihood of genuine and serious mental distress" and so as to serve as a guarantee that the claim is not spurious.

Finally, Robinson asserts that the City of St. Gabriel is vicariously liable for the torts of its employees. (R.Doc. 3, p. 28). A city can be liable for the negligence of its police officers. *Keller v. City of Plaquemine*, 96-1933 (La.App. 1 Cir. 9/23/97), 700 So.2d 1285, 1291; *See also N.S. v. City of Alexandria*, 919 F.Supp.2d 773, 783 (W.D.La. 2013). Because Robinson has a potentially viable state law claim for negligence against Officers Jones and Darville, and because they were clearly acting in the course and scope of employment, Robinson also has a claim against the City for its employees' negligence. Accordingly, this claim survives summary judgment as well.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' Summary Judgment is **GRANTED IN PART**. All claims against all defendants are dismissed, except Plaintiff Chad Durrell Robinson's claims (1) against Officers Robert Jones, Jr. and Officer Justin Darville for ordinary state law negligence for their alleged failure to protect Robinson's property and for their alleged infliction of emotional distress and (2) against the City of St. Gabriel for vicariously liable for that negligence.

Signed in Baton Rouge, Louisiana, on October 8, 2014.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**